## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

TOMMY RAY LUCAS,       )
                                      )
          Plaintiff,       )
                                      )
v.                           )       Case No. CIV-24-425-GLJ
                                      )
FRANK BISIGNANO,[1]     )
Acting Commissioner of the Social  )
Security Administration,      )
                                      )
         Defendant.    )

## OPINION AND ORDER

Claimant Tommy Ray Lucas requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled.  For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Martin O'Malley as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

## Claimant's Background

Claimant was fifty-five years old at the time of the most recent administrative hearing. (Tr. 565, 572). He completed three years of college and has worked as an employment agency manager and teacher's aide. (Tr. 218, 555). Claimant alleges that he has been unable to work since February 1, 2015, due to sarcoidosis, chronic fatigue, diabetes, blurry vision, lupus, depression, weight loss, immune disorder, and arthritis. (Tr. 217).

## Procedural History

On March 16, 2016, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Luke Liter held an administrative hearing and determined that Claimant was not disabled in a written opinion dated August 15, 2018. (Tr. 12-20). The Appeals Council denied review, but this Court reversed and remanded in Case No. CIV-19-193-RAW-SPS, with instructions to properly consider his impairments at step two. (Tr. 589-599). On remand, ALJ Luke Liter held a second administrative hearing and again determined Claimant was not disabled in a written decision dated August 28, 2023. (Tr. 546-557). The Appeals Council again denied review, so ALJ Liter's August 2023 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

At step two of the sequential evaluation, the ALJ found Claimant had the severe impairments of sarcoidosis, type II diabetes mellitus with peripheral neuropathy, osteoarthritis in the bilateral shoulders, and major depressive disorder, as well as the nonsevere impairments of hypertension and central corneal opacity of the left eye. (Tr. 549). He then determined Claimant did not meet a Listing. (Tr. 549-552). At step four, the ALJ found Claimant had the residual functional capacity ("RFC") through his date last insured of September 30, 2021, to perform light work as defined in 20 C.F.R. § 404.1567(b), *i.e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk a combined total of six hours of out of an eight-hour workday, but that he should avoid climbing ladders/ropes/scaffolds and exposure to hazards such as unprotected heights or dangerous moving machinery, as well as driving; could only occasionally, balance, kneel, stoop, crouch, or crawl. Finally, the ALJ determined Claimant could understand, remember, and carry out simple and detailed tasks, but not complex tasks, could tolerate occasional contact with co-workers, supervisors, and members of the public, and could adapt to a work environment and changes in a work environment. (Tr. 552). Then ALJ then concluded that although Claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i.e.*, marker, production assembler, and housekeeping cleaner. (Tr. 555-557).

## Review

On appeal, Claimant contends the ALJ failed to properly account for his subjective

complaints, which thereby affected the RFC assessment and step five findings. The Court finds these contentions unpersuasive, and the case should be affirmed.

The relevant medical evidence reflects that Claimant was diagnosed with sarcoidosis back in 2005. In 2016, Claimant (who had no health insurance prior to this time) complained of visual issues that arose from the sarcoidosis, as well fatigue, tiredness, and joint pain. (Tr. 288). Dr. Philip Haddad recommended Claimant see an ophthalmologist for his visual complaints, noting they may also be related to his diabetes. (Tr. 292). In March 2016, Claimant indicated that his blurry vision had improved somewhat, but that it was a recurring problem several times per year. (Tr. 296). Further treatment notes as to Claimant's left eye reflect corneal ulcer and corneal edema, and he underwent a corneal scrape on the left eye in May 2016, which resulted in some improvement. (Tr. 329-332, 342). Treatment notes from 2017 reflect Claimant had worsening blood sugar control, as well as plans for follow-up treatment with a rheumatologist for his sarcoidosis. (Tr. 418).

On March 26, 2018, Dr. S. A. Chaudry conducted a physical consultative examination of Claimant. (Tr. 377). Upon exam, she noted Claimant had painful range of motion of flexion, extension, rotation, and lateral movements with bilateral paraspinous muscular tenderness. (Tr. 378, 383). Additionally, his right hand had painful range of motion of flexion and extension, but he had normal grip strength and fine and gross manipulative movements. (Tr. 379, 383). Dr. Chaudry assessed Claimant with sarcoidosis, diabetes mellitus, hypertension, hyperlipidemia, and arthralgias. (Tr. 379).

-5-

That same day, Dr. Larry Vaught, Ph.D., conducted a mental status examination of Claimant. (Tr. 384). Dr. Vaught noted Claimant reported a history of anxiety and depression, but no treatment for it, and found he had only mild constriction of affect, and that he was mildly slowed in the areas of concentration, persistence, and pace, as well as exhibiting difficulty with delayed memory. (Tr. 386). He assessed Claimant with moderate recurrent major depressive disorder with anxious distress, mild neurocognitive disorder, and sarcoidosis, hyperlipidemia, diabetes, and hypertension. (Tr. 386). He likewise completed a mental RFC assessment in which he indicated that Claimant had marked limitations in the ability to understand and remember complex instructions and carry out complex instructions, as well as moderate limitation in the ability to make judgments on complex work-related decisions, and mild limitations in the areas of understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions. (Tr. 387). In support, he noted that Claimant was 4/4 in immediate recall, but only 1/4 in delayed recall. (Tr. 387). He further noted moderate limitations in the ability to interact with supervisors, coworkers, and the public, noting that Claimant had depression and anxiety impacting his motivation, self-esteem, sleep, and social interaction. (Tr. 388).

State reviewing physicians determined initially and upon reconsideration that Claimant's impairments were nonsevere. (Tr. 60-63, 71-74).

In his written opinion at step four, the ALJ summarized Claimant's hearing testimony, as well as much of the evidence in the record. (Tr. 552-555). Specifically, the ALJ noted the records indicating Claimant was stable from a pulmonary standpoint

regarding sarcoidosis, and that his treatment for diabetes mellitus, hypertension, and hyperlipidemia were relatively stable. (Tr. 554). As to the left eye impairment, the ALJ found that it limited Claimant's ability to drive, even as a non-severe impairment, and thus added that limitation to the RFC. (Tr. 554). The ALJ further noted that physical examinations of Claimant were "overwhelmingly unremarkable" with no loss of strength or sensation in the extremities, with only Dr. Chaudry's notation regarding pain with range of motion in the right hand and lumbar spine, and tenderness in the back. (Tr. 554). As to Dr. Vaught's mental RFC assessment of Claimant, the ALJ noted he did not assess any functional limitations but instead rated them on a scale. The ALJ found that the "opinion (such as it is) is consistent with" Claimant's reports regarding mental and physical impairments. (Tr. 555). After determining the RFC, then ALJ thus concluded that Claimant was not disabled. (Tr. 557).

**Subjective Statements**. Turning to the ALJ's assessment of Claimant's subjective statements at step four, the Court recognizes that the Commissioner uses a two-step process to evaluate a claimant's subjective statements of impairments, limitations, and pain:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3]    Tenth Circuit

---

[3]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated

precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8.  An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801.  An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].  The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors"

---

the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.*  at *2.

[4]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  The Cout agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

is insufficient. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *10.

Under 20 C.F.R. § 404.1529, and as restated in Soc. Sec. Rul. 16-3p, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." 2017 WL 5180304, at *5.[5] Claimant contends the ALJ did just that when he cited excerpts from medical records and discounted Claimant's statements regarding intensity, persistence, and the limiting effects of his symptoms. He specifically contends that his sarcoidosis caused fatigue and affected his eye and joints more than his lungs because 2018 and 2019 treating notes indicated that his constitutional symptoms affected his activities of daily living and he complained of polyarthralgias in his hands, wrists, shoulders, and ankles, but that the ALJ failed to account for this. (Tr. 891, 939-940).

As outlined above, however, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding Claimant's subjective complaints were not believable to the extent alleged at step four, *i.e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Claimant contends that his sarcoidosis affected his eye and his joints more than his lungs, and the

---

[5] Plaintiff relies heavily on the Fourth Circuit's opinion in *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), to emphasize this guidance. *Arakas* is consistent with the SSA's regulations and guidance but focuses its analysis on the "unique nature of fibromyalgia," for which "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects . . ., based on the current medical understanding of the disease." *Id.* at 95, 97. Claimant contends that sarcoidosis is similar enough to fibromyalgia for *Arakas* to apply here. Regardless of the accuracy of comparison and the import of a Fourth Circuit opinion on this Court's decision, the ALJ did not err here, as discussed further.

ALJ failed to consider this. However, the ALJ recognized that Claimant complained of fatigue, and noted Claimant was prescribed medication for joint pain in 2019. He recognized Claimant had moderate osteoarthritic change in the bilateral shoulder, but that Claimant had no loss of strength or range of motion in the upper extremities. He further limited the RFC regarding driving based on Claimant's corneal opacity and his testimony regarding the effect. (Tr. 554). The ALJ thus did not discount Claimant's subjective statements entirely but crafted an RFC that accounted for his statements *and* the findings in the record, taking into consideration the requisite factors. There is no indication that the ALJ misread Claimant's medical evidence, taken as a whole, at step four. His evaluation is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Claimant further contends that the ALJ's failure to take into account his subjective symptoms affected his RFC assessment, noting that Vocational Expert ("VE") testimony indicated that Claimant would not be able to maintain employment if he needed additional breaks due to fatigue and other symptoms. (Tr. 583). Claimant contends that a proper consideration of Claimant's subjective symptoms and consideration of his sarcoidosis and concurring symptoms would establish his need for such breaks that would render him unemployable. But, again, there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole or that a need for such breaks is indicated at any point in the record even by subjective statements, and the ALJ's evaluation is entitled to deference. *See Casias*, 933 F.2d at 801. The essence of Claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Because the ALJ's decision is "reasonably

-10-

discerned," the Court declines to remand. *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (An agency is not required to "follow a particular formula or incant 'magic words' like 'incredible' or 'rebutted' to overcome [a] presumption of credibility on appeal.   To the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'   So long as the [Agency's] reasons for rejecting [a person's] credibility are reasonably discernible, the agency must be understood as having rebutted the presumption of credibility. It need not use any particular words to do so.  And, once more, a reviewing court must uphold that decision unless a reasonable adjudicator would have been compelled to reach a different conclusion.") (quoting, *inter alia*, *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 15th day of January, 2026.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**